### LUCAS v. BARRINGER, MAYOR, *ET AL.*

#### (112 S. E. 746)

1. MUNICIPAL CORPORATIONS—COUNCIL'S DECLARATION THAT BOND ELEC-
   TION PETITION CONTAINED NAMES OF MAJORITY CONCLUSIVE IN FAVOR
   OF PURCHASER OF BOND.—A purchaser of municipal bonds may rely
   on the truth of a declaration of fact made by the authorities and pe-
   culiarly within their knowledge, and as against the holder for value
   the proof thereof cannot be attacked, and declaration of the city
   council that an election petition contained names of a majority of
   the freeholders is conclusive and incontrovertible.

2. MUNICIPAL CORPORATIONS—VALIDATING ACTS CURED IRREGULARI-
   TIES IN BOND ELECTION.—Notwithstanding the charter of the city
   of Florence, as amended by Act. Feb. 25, 1921 (32 St. at Large,
   p. 607), § 15, provides that any debt or liability incurred in viola-
   tion of the provisions of this section should be void, irregulari-
   ties in a bond election were cured by the Acts of the General
   Assembly approved February 17, 1922, and irregularities did not
   affect the validity of the bonds.

3. MUNICIPAL CORPORATIONS—AMENDMENTS TO CONSTITUTION EXEMPT-
   ING CITY OF FLORENCE AS TO LIMITATIONS OF BONDED INDEBTEDNESS

---

NOTE: The question as to what objects or purposes may be com-
bined in a single question submitted to the voters of a municipality is
discussed in a note in 26 L. R. A. (N. S.), 665.

VALID.—By constitutional amendments to Article 8, § 7, and Article 10, § 5, approved by Act March 10, 1919 (31 St. at Large, p. 90), the city of Florence was exempted from the limitations as to bonded indebtedness of those sections.

4. STATUTES—JOINT RESOLUTION ENTERED ON JOURNAL OF EACH BRANCH OF LEGISLATURE BOTH WITH AYE AND NAY VOTE AND CERTIFIED BY SECRETARY OF STATE NOT TO BE IMPEACHED BY JOURNALS.—Where a joint resolution had been entered once on both the House and Senate Journal with aye and nay vote, this entry fulfilled requirement of Const., Art. 16, § 1, and a certificate of the Secretary of State attached to the copy of the resolution certifying that it had been read three times on three several days in each house, duly ratified and signed by the President of the Senate and Speaker of the House, approved by the Governor and the great seal impressed, was evidence of the passage of the Act, and the introduction of the whole Senate and House Journals was inadmissible to show that the joint resolution had not received three readings, and that the entries were not in accordance with Article 16, § 1.

5. STATUTES—ASSEMBLY JOURNALS ADMISSIBLE IN EVIDENCE TO SUPPLY OMISSIONS IN COPY CERTIFIED BY SECRETARY OF STATE.—Where the certified copy of an Act by the Secretary of State did not cover provisions of Const., Art. 16, § 1, showing that an Act ratifying an amendment of the Constitution was passed by an aye and nay vote, the Journals of the Senate and House were admissible to show such facts.

6. MUNICIPAL CORPORATIONS—BOND ISSUES FOR CITY OF FLORENCE HELD NOT TO EXCEED LIMITATIONS.—As the proceeds of waterworks and sewerage bonds of the city of Florence were to be used for "improving and extending" the systems, these purposes were embraced within the amendment "building, directing and maintaining," and as the proceeds of street improvement bonds were to be used for "building, repairing and improving" streets and sidewalks, the bond issues came within the provision of the Constitutional Amendments to Article 8, § 7, and Article 10, § 5, ratified by Act Feb. 16, 1915 (29 St. at Large, p. 87), and did not exceed the constitutional or statutory limitations.

7. MUNICIPAL CORPORATIONS—SUBMISSION OF BOND ISSUE FOR TWO PURPOSES JOINTLY AS ONE PROPOSITION VALID; "ANY."—Where the proceeds of an issue of bonds was to be used for the purpose of improving and extending the waterworks and sewerage system of the city of Florence, and the issue was under the Constitutional Amendments to Const., Art. 8, § 7, and Article 10, § 5, in neither of which amendments did the word "or" appear in connection

with the words "waterworks and sewerage," the 1915 amendments' use of "exclusively for any of said purposes" negatives a disjunctive interpretation, "any" meaning one or more, and the bond issue was not void as submitting two purposes jointly as one proposition.

8. MUNICIPAL CORPORATIONS—CITY COUNCIL MAY MAKE BONDS MATURE SERIALLY.—Under Act March 11, 1920 (31 St. at Large, p. 1489), a city council has the right to make bonds mature serially.

9. MUNICIPAL CORPORATIONS—PROVISION FOR READVERTISEMENT OF BONDS NOT MANDATORY.—Where an Act authorizing the issuance of bonds directed the sale thereof to the highest bidder after at least three weeks' advertisement of such sale, and provided no bid for less than par should be accepted, and that the advertisement of such sale may be repeated until the bonds were sold at par, in the discretion of the city council, readvertisement was not mandatory, and where bonds had been advertised, but no bid at par received, a subsequent bid at par with accrued interest was properly accepted without further advertisement.

Before SHIPP, J., Florence.   April, 1922.   Affirmed.

Action by Edward H. Lucas in behalf of himself and other taxpayers, against W. R. Barringer, Mayor, et al., as city council of Florence.   Decree for defendants and plaintiff appeals.

The following is the decree of the Circuit Court:

By agreement of counsel the three above-entitled causes were consolidated and heard by me.   Each complaint was by the same taxpayer and freeholder against the Mayor and city council of Florence praying for an injunction restraining the issuance of bonds of the city of Florence, one of said issues being for $100,000, the proceeds to be used for the purpose of improving and extending the waterworks and sewerage system in said city; another of said issues being for $125,000, for the purpose of paying off and liquidating all outstanding open indebtedness due by said city; and the third of said issues being for $350,000, for the purpose of building, repairing, and improving streets and sidewalks in said city.

The grounds for injunction as set out in each complaint affecting all of said issues were that the issuance would be unconstitutional and illegal, in that:

(1) The petitions filed with city council asking that the elections be held were not signed by a majority of the freeholders in said city as shown by its tax books.

(2) That in the introduction, passage, and adoption of the resolutions or ordinances calling the election, declaring the result thereof and authorizing the issuance of the bonds, and in the publishing of the notice of election, and in the opening and closing of city books of registration for the elections, the mandatory requirements of the charter of the city of Florence were not complied with, and as in and by said charter it was provided that any debt or liability incurred by the City of Florence in violation of the provisions of the charter should be void, that said failure to comply therewith makes said bonds void.

(3) That the said issues of bonds (each of them) will exceed the constitutional limitation of indebtedness based on the assessed value of the taxable property in the city of Florence in violation of the provisions of Article 8, § 7, and Article 10, § 5, of the Constitution.

(4) That under the Acts of the General Assembly authorizing the issuance of the bonds it was provided that city council should sell said bonds after at least three full weeks' advertisement of said sale, but that the sales of said bonds have been made without such advertisement in pursuance of said Acts.

(5) In the complaint on the issue of $100,000 of waterworks and sewerage system extension bonds there was the additional ground of unconstitutionality and illegality that the question of the issuance for the two purposes was submitted as one proposition, and thereby the voters were deprived of the privilege of voting for or against each separate purpose.

(6)  In the complaint on the issue of $350,000 street improvement bonds there was the additional ground of illegality that the Act authorizing the issuance of said bonds and the ordinances of city council adopted immediately following the election fixed the maturity at 30 years, whereas city council is about to issue said bonds with serial maturities, the maturity of $5,000 of said bonds being one year from their date.

The defendants deny that the issuance of said bonds will be unconstitutional and illegal, and allege that all irregularities, if any, in the proceedings of city council relating to said issues were cured by validating Acts of the General Assembly approved February 17, 1922; that the issuance of each issue of bonds respectively for the purposes submitted to the electors were authorized by Acts of the General Assembly passed at the 1919 session (Acts March 8, 1919, March 10, 1919, March 8, 1919 [31 St. Large, pp. 532, 534, 537]), and approved by the Governor, the power to increase the rate of interest from 5 per cent. to 6 per cent., and issue bonds with serial maturities, if desired, having been authorized by the Act approved March 11th, 1920 (31 St. at Large, p. 1489); that the limitations of bonded indebtedness of the city of Florence for the purpose for which these bonds are issued was removed from the provisions of Article 8, § 7, and Article 10, § 5, by amendment to those sections ratified by the Act approved March 10, 1919, or that, if for any reason said amendment was not effective, under the amendment to the same sections ratified by the Act approved February 16, 1915 (Act Feb. 16, 1915 [29 St. at Large, p. 87]), such limitations were removed; that the sale of the bonds had been made after three weeks' advertisement, inasmuch as the sale had been so advertised, and, no par bid having been received on the opening bids thereunder, a sale was not made until

such par bid was received; and that the sale has now been made for par and accrued interest.

These cases were referred to H. A. Brunson, Judge of Probate, acting Master for Florence County, to take and report the testimony, and the testimony taken before him with exhibits is now before me.

1.   Mr. McTaggart, present clerk of city council, produced the three original petitions of freeholders asking for the respective elections, and testified that Mr. Malloy, former clerk of council, a Miss Cottingham, and himself had carefully checked over the names of the freeholders as appeared on the city tax books with the signatures on the petition for the $100,000 waterworks and sewerage bonds and the $125,000 funding bonds, and as a result of such checking they ascertained that the petitions had each been signed by more than a majority of the freeholders; that practically all of the signatures on the petitions were familiar to some one of them, and in that way he knew that such signatures were the genuine signatures of the persons purporting to sign the same; that he personally had checked in the same way the signatures on the petition for $350,-000 street improvement bonds, and that the petition was signed by more than a majority of the freeholders; that most of the signatures were familiar to him, and in that way he knew that such signatures were genuine.

In addition to this the resolutions of city council ordering the elections recite that such petitions contain the names of a majority of the freeholders.

If the bonds had already been sold and were in the hands of holders for value, I would not have considered any testimony other than the declaration of city council that the names on the petitions constituted a majority of freeholders in the city of Florence as appears by the tax books, for certainly a purchaser of bonds of a municipality or other political subdivision in this State

has a right to rely on the truth of a declaration of fact which is peculiarly within their knowledge, made by the authorities in such municipality or political subdivision, and as against the holder for value of such bonds the truth thereof cannot be attacked; otherwise the question of fact as to whether the petition did contain the requisite number of signatures, and whether the same were genuine, would be open to attack during the whole life of the bonds. The declaration of city council as to such holders for value is conclusive and incontrovertible. I can find no decision of our Supreme Court on the question as to what is necessary to preclude an attack upon the number or genuineness of the signatures to a petition asking for an election, and, as it is a question of great concern in the validity of bond issues, if possible, some expression of opinion on this point should be obtained from the Supreme Court of this State. But, as the bonds in question have not yet passed into the hands of purchasers for value, I find as a fact from the testimony of the clerk of city council that each of the petitions were signed by more than a majority of the freeholders of the city of Florence, and that allegation of the plaintiff to the contrary is without foundation.

2. The original ordinances or resolutions adopted in the calling of the elections, declaring the result and authorizing the issuance of the bonds, and also the original minute books of city council containing the proceedings of council in reference thereto, were in evidence, and also proof that the city books of registration for said elections were not opened and closed within the time prescribed by law, and that the notices of the election were not published for the length of time required by the charter. The charter of the city of Florence as amended by the Act approved February 25, 1921 (Acts 1921, p. 599), was produced and my attention called to the require-

ments therein contained for the passage and adoption of resolutions and ordinances, and especially to the provision in Section 15 thereof that any debt or liability incurred in violation of the provisions of this section shall be void. There was also in evidence certified copies (with the full and proper certificate of Secretary of State attached thereto) of three Acts of the General Assembly, each approved February 17, 1922, validating the elections respectively, together with all the proceedings, acts, and doings had with reference to such elections and with reference to the issuance of said bonds, and the same were validated, ratified, and declared legal in all respects, and any bonds issued or to be issued by the city of Florence in pursuance of said elections were declared to be valid and legal in all respects as incontestable obligations of the said city of Florence. An examination of the minutes of city council showed irregularities and violations of the provisions of the charter in the passage and adoption of the resolution or ordinances in the opening and closing of the books of registration and in the notices of the elections, but such irregularities cannot affect the validity of the bonds, as the validating Acts cured all statutory violations, under which head the irregularities complained of fall. *Hodge v. Trustees of School District,* 80 S. C., 518, 61 S. E., 1009; *Dove v. Kirkland,* 92 S. C., 318, 75 S. E., 503. This ground of unconstitutionality and illegality must, therefore, fall.

In connection with the above matters it appears from the exhibits that on the 19th and 20th of April, 1922, city council on each of the issues of bonds adopted resolutions again declaring the result of the elections respectively, and therein fixed the form of the bonds and provided for a tax levy for the payment of interest and creation of a sinking fund. These ordinances were properly passed and ratified in full and complete compliance with all the provisions and requirements of the charter of the city of Florence, and

of law, are valid ordinances, and I so hold as a matter of law and fact. I have referred to these ordinances specifically, as they were adopted after the approval of the validating Act, and it has been suggested by counsel that, if there were any irregularities therein, the validating Act might not be curative thereof.

From the statement of the city clerk and treasurer showing the assessed value of property in the city of Florence and the bonded indebtedness of the city it appears that the issue of the waterworks and sewerage bonds and of the funding bonds would not make the bonded indebtedness of the city exceed 8 per cent. of such assessed value, but that the issue of $350,000 street improvement bonds would have this result. The statement of the auditor of Florence County showing the assessed valuation of property in the county and in the school district of the city of Florence, and the respective bonded indebtedness of those political subdivisions, the territorial limits of which include the city of Florence, shows that the 15 per cent. limitation of Article 10, § 5, would be exceeded by the issue of any of the said bonds. But defendants have submitted two amendments to Article 8, § 7, and Article 10, § 5, exempting the city of Florence from the limitations of those sections.

The first submitted was an Act approved March 10, 1919 (Acts 1919, p. 90), entitled "An Act to ratify an amendment to Section 7 of Article 8 and Section 5 of Article 10 of the Constitution, so as to exempt the cities of Rock Hill and Florence from the provisions thereof," and thereunder it was enacted that the limitations imposed by those sections shall not apply to the bonded indebtedness incurred by the city of Rock Hill in the County of York, nor the city of Florence, in the County of Florence, when the proceeds of any bonds issued by said cities are applied exclusively to the purchase, erection, improvements, and

maintenance of streets, sidewalks, waterworks, lighting plants, gas plants, sewerage system, or for the payment of debts incurred, and when the question of incurring such indebtedness is submitted to the qualified electors of said municipality as provided by law. They also introduced in evidence a certified copy of the joint resolution proposing the amendment in the words above used, approved February 14, 1918, to which is attached the certificate of the Secretary of State under the seal of the State "that the copy is true and correct as taken from and compared with the original joint resolution so entitled and now on file in this office, and further that said joint resolution was read three times on three several days in each house of the General Assembly, duly ratified and signed by the President of the Senate and the Speaker of the House of Representatives as evidenced by their signatures thereto, approved by the Governor the 14th day of February, A. D. 1918, and the great seal of the State impressed thereon," and had also introduced in evidence the certified copy of the Act above referred to ratifying the amendment to Section 7 of Article 8 and Section 5 of Article 10 of the Constitution, approved March 10, A. D. 1919 (Acts 1919, p. 90), and attached to it is a certificate of the Secretary of State in the same form and to the same effect as the certificate above set forth attached to the joint resolution. They had also produced in evidence pages 368, 369, 379, and 380 of the Journal of the Senate for 1918, which pages show as follows:

On February 6, 1918, under the head of "Second Reading Bills," pages 368, 369:

"Passed by Aye and Nay Vote

"S. 1093.—Mr. Beamguard: A joint resolution to amend Section 7 of Article VIII of the Constitution, relating to municipal bonded indebtedness, by adding a proviso thereto as to the city of Rock Hill.

"Be it resolved by the General Assembly of the State of South Carolina:

"Section 1. That the limitations imposed by Section 7, Article VIII, and Section 5 of Article X of the Constitution of the State of South Carolina shall not apply to the bonded indebtedness incurred by the city of Rock Hill, in the County of York, when the proceeds of any bonds issued by said city are applied exclusively to the purchase, erection, improvements and maintenance of streets, sidewalks, waterworks, lighting plants, gas plants, sewerage system, or for the payment of debts incurred, and when the question of incurring such indebtedness is submitted to the qualified electors of the said municipality as provided. by law.

"Sec. 2. That the question of adopting this amendment to the Constitution shall be submitted to the qualified voters of this State at the next general election for representatives to the General Assembly. Those in favor of the amendment will deposit a ballot with the following words plainly written' or printed thereon: 'Amendment to Section 7, Article VIII, and Section 5 of Article X of the Constitution, exempting Rock Hill from the foregoing provisions relating to municipal bonded indebtedness—Yes.' Those opposed to said amendment will deposit a ballot with the following words plainly written or printed thereon: 'Amendment to Section 7, Article VIII, and Section 5 of Article X of the Constitution, exempting Rock Hill from the foregoing provisions relating to municipal bonded indebtedness—No.'

"The question 'Shall the joint resolution pass the second reading and be ordered to a third?' was taken, on which the yeas and nays were demanded and taken, resulting as follows: Yeas—[The names of 38 Senators being set out.]

"The joint resolution, having been read the second time and having received the necessary two-thirds vote of the

Senate, was passed and ordered placed on the calendar for a third reading."

February 6, 1919, pages 379, 380:

"Reconsidered, Amended and Read.

"S. 1093.—Mr. Beamguard: A joint resolution to amend Section 7 of Article VIII of the Constitution, relating to municipal bonded indebtedness, by adding a proviso thereto as to the city of Rock Hill:

"On motion of Mr. Beamguard, the vote whereby the joint resolution found a second reading was reconsidered.

"Mr. McCown proposed the following amendments, which were adopted:

"Amend title by striking out the word 'city' and inserting therefor the word 'cities.'

"After the words 'Rock Hill' insert the words 'and Florence.'

"Amend Section 1 as follows: After the word 'York' on line 4, insert the words 'nor to the city of Florence in the county of Florence,' change the word 'city' on line 4 to 'cities.'

"Amend Section 2 as follows: On lines 6 and 9 after the words 'Rock Hill' insert the words 'and Florence.'

"The question, 'Shall the joint resolution pass the second reading and be ordered to a third' was taken, on which the yeas and nays were demanded and taken, resulting as follows: Yeas—[The names of 33 Senators being set out.]

"The joint resolution, having been read the second time and having received the necessary two-thirds vote of the Senate, was passed and ordered placed on the calendar for a third reading.

"The joint resolution was published in the Senate Journal this morning."

They had also introduced into evidence pages 1777 and 1778 of the House Journal, which appeared under the recital, "The following bills and joint resolutions were taken

up, read severally the second time and ordered to a third reading":

"H. 1270 (S. 1093—Mr. Beamguard) : A joint resolution to amend Section 7 of Article VIII and Section 5 of Article X of the Constitution so as to exempt the cities of Rock Hill and Florence from the provisions thereof.

"Be it resolved by the General Assembly of the State of South Carolina:

"Section 1. That the limitations imposed by Section 7 of Article VIII and Section 5 of Article X of the Constitution of the State of South Carolina shall not apply to the bonded indebtedness incurred by the city of Rock Hill, in the county of York, nor to the City of Florence, in the County of Florence, when the proceeds of any bonds issued by said cities are applied exclusively to the purchase, erection, improvements and maintenance of streets, sidewalks, waterworks, lighting plants, gas plants, sewerage system or for the payment of debts incurred and when the question of incurring such indebtedness is submitted to the qualified electors of the said municipality as provided by law.

Sec. 2. That the question of adopting this amendment to the Constitution shall be submitted to the qualified voters of this State at the next general election for representatives to the General Assembly. Those in favor of the amendment will deposit a ballot with the following words plainly written or printed thereon: 'Amendment to Section 7, Article VIII, and Section 5 of Article X of the Constitution, exempting Rock Hill and Florence from the foregoing provisions relating to municipal bonded indebtedness—Yes.' Those opposed to said amendment will deposit a ballot with the following words plainly written or printed thereon: 'Amendment to Section 7, Article VIII, and Section 5 of Article X of the Constitution, exempting Rock Hill and Florence from the foregoing provisions relating to municipal bonded indebtedness—No.'

"Pursuant to the provisions of the Constitution, the yeas and nays were taken on the passage of the joint resolution, resulting as follows: Yeas, 88; nays, 0.

"Those who voted in the affirmative are: [The names of 88 members being set out.]

"'Those who voted in the negative are: None.

"The joint resolution, having received the necessary two-thirds vote of all the members elected to the House, was agreed to."

The plaintiff had introduced in evidence, over objection of defendants, the whole Senate and House Journals for 1918, and attempted to show therein that the joint resolution had not received three readings in either the Senate or House, and that on the third reading in the Senate it had not been entered in the journal in form as amended, and that the journal entries were not in accordance with the requirements of Article 16, § 1, of the Constitution. The defendants objected to any further examination of the journals being made, inasmuch as they had shown that the joint resolution had been entered once on both the House and Senate Journals with the aye and nay vote thereon, and that this one entry fulfilled the constitutional requirements, and, as the certificate of the Secretary of State attached to the copy of the joint resolution certified that it had been read three times on three several days in each house of the General Assembly, duly ratified and signed by the President of the Senate and Speaker of the House of Representatives, approved by the Governor and the great seal of the State impressed thereon, the Court was not at liberty to inquire further into what the journals of the two houses may show as to the successive steps which may have been taken in the passage of the original joint resolution.

I sustained the objection and would not allow the introduction of the balance of the journals, and did so under the ruling in the case of *State v. Chester,* 39 S. C., 307, 17

6 S. C.—120.

S. E., 752, and *Graham v. Ervin,* 114 S. C., 419, 103 S. E., 750. I recognize that the journals could be examined to ascertain whether the prerequisites fixed ,by the Constitution, and of which prerequisites the journals of the two houses are required to furnish the evidence, had been complied with, but in this case, each of the journals having shown one entry of the joint resolution with the aye and nay vote thereon, I hold that such entry is a compliance with the constitutional requirements.

Article 16, § 1, of the Constitution does not require more than one entry on each journal. The journals of the Senate and House for the year 1919, pages 317 and 576, respectively, were introduced in evidence to show that the Act ratifying the amendment was passed by an aye and nay vote. The certificate of the Secretary of State did not cover this provision of said Article 16, § 1, and I therefore allowed this fact to be shown by the journals. I therefore hold that the amendment to Article 8, § 7, and Article 10, § 5, of the Constitution as ratified by Act approved March 10, 1919 (Acts 1919, p. 90), is a valid and legal amendment to said sections.

The purposes for which the bonds are issued come under the provisions of that amendment: (1) Improving and extending the waterworks and sewerage system. (2) Paying off and liquidating all outstanding open indebtedness due by the city of Florence. This is the indebtedness existing on the date of filing petition for election, viz., March 9, 1921, as shown by the recitals in the form of the bonds. *Clinkscales v. Fant,* 116 S. C., 212, 107 S. E., 515. (3) Building, repairing, and improving streets and sidewalks.

I therefore hold that the issuance of said bonds will not exceed any constitutional or statutory limitation.

The second amendment submitted was an amendment to Article 8, § 7, and Article 10, § 5, ratified by an Act approved February 16, 1915 (Acts 1915, p.

87), entitled "An Act to ratify an amendment to Section 7, Article VIII of the Constitution, relating to municipal bonded indebtedness by adding a proviso thereto as to the city of Florence," whereby it was enacted "that the limitations imposed by this Section and Section 5, Article X of the Constitution shall not apply to the bonded indebtedness incurred by the city of Florence, in the county of Florence, when the proceeds of said bonds are applied exclusively for the building, erecting, establishing, and maintaining of streets, waterworks, lighting plants, sewerage system or for the payment of debts already incurred, exclusively for any of said purposes; and when the question of incurring such indebtedness is submitted to the qualified electors of said municipality, as provided in the Constitution upon the question of bonded indebtedness."

The defendants claim that, if the amendment of 1919 is not valid, under the above amendment the bonds will be valid and legal. Having held the 1919 amendment valid, it should be unnecessary to consider this position, but, inasmuch as I may be wrong in the view I have taken of the construction of Article 16, § 1, of the Constitution, I will consider the validity of the bonds in the light of this amendment.

There is no question that this amendment is valid and legal. Unquestionably the waterworks and sewerage bonds and the street improvement bonds come under its provisions. The proceeds of the waterworks and sewerage bonds are to be used for "improving and extending" the systems, and these purposes are embraced within the wording of the amendment "building, erecting and maintaining." "Maintaining" has been defined in *Herbert v. Griffin,* 99 S. C., at page 8, 82 S. E., at page 988, to include "repairing," and "repairing" must certainly under any construction include "improving." The proceeds of the street improvement bonds are to be used for the purpose of "building, repair-

ing and improving" streets and sidewalks. This is prac-
tically the wording of the amendment, for, as above stated,
"maintaining" includes "repairing and improving." "Street"
includes "sidewalk," as a sidewalk is part of a street.
*Castons v. City of Rock Hill,* 107 S. C., 124, 92 S. E., 191.

I am of the opinion that the funding bonds also come
under the provisions of that amendment. The purpose for
which these bonds are issued is for paying off and liqui-
dating all outstanding open indebtedness due by the city. The
language of the amendment is "payment of debts already in-
curred." "Outstanding open indebtedness" is synonymous
with "debts already incurred," and likewise with "past in-
debtedness," and therefore comes under the ruling in *Clink-
scales v. Fant, supra.*

I therefore hold that the issuance of said bonds under
the 1915 amendment will not exceed any constitutional or
statutory limitation.

I will now consider the objection that, as the pro-
ceeds of the waterworks and sewerage bonds are to
be used for two purposes, viz., the improvement of
waterworks system and the improvement of sewerage sys-
tem, the two propositions should have been submitted
separately to the voters.

Under the Act of the General Assembly of South Caro-
lina, approved March 10, 1919 (being Act No. 237, Acts
1919, p. 534), city council of Florence was empowered to
hold an election on the question of the issuance of $100,-
000 in coupon bonds, the proceeds of such bonds to be used
for the purpose of improving and extending the water-
works and sewerage system of said city; and it was therein
provided that the ballots used at the election should have
printed thereon, "For the issue of one hundred thousand
($100,000) dollars waterworks and sewerage bonds—Yes,"
and the same ballot with word "No" instead of "Yes" there-

on.    Therefore by statute the questions were authorized to
be submitted as one.

Plaintiff contended that the general amendment to Article
8, § 7, ratified February 3, 1911, whereby the limitation of
that section for certain purposes was removed as to all
municipalities, was mandatory as to each purpose being sub-
mitted to voters as a separate proposition, as shown by the
use of the word "or" before each purpose, and therefore
the submission in this case was a violation of the constitu-
tional provision.    This contention cannot be sustained, as
the issuance of the bonds in question are under the provi-
sions of either amendment of 1915 or 1919; which are
special enactments relating to the city of Florence, passed
subsequent to the general amendment above referred to,
and will control.    *State v. Bowden,* 92 S. C., at page 401,
75 S. E., 866.    In neither of the amendments of 1915 or
1919 does the word "or" appear in connection with the
words "waterworks and sewerage," and, on the contrary,
the expression used in the 1915 amendment "exclusively for
any of said purposes," negatives the disjunctive interpreta-
tion, for the word "any" in its common acceptation means
"one or more," and our Supreme Court has so defined it in
*State v. Antonio,* 3 Brev. 567, where it was held that "any"
means "one or more."

The rule that the propositions cannot be submitted jointly
as laid down by our Supreme Court in *Herbert v. Griffith,*
99 S. C., 7, 82 S. E., 986.    *Ross v. Lipscomb,* 83 S. C., 136,
65 S. E., 451; 137 Am. Rep., 794.    *Chase v. Gilbert,* 83 S.
C., 546; 65 S. E., 735.. *State v. Brasington,* 93 S. C., 447, 76
S. E., 1036, and *Weeks v. Bryant,* 99 S. C., 8, 82 S. E., 988;
are not applicable to this case, as the decision in those cases
was based on the fact that the wording of the statute under
which the bonds were issued required the submission of
the propositions to be separate, whereas in this case the Act

authorizing the issuance of the bonds provides for the joint submission.

In this concurring opinion in *Johnson v. Roddey,* 83 S. C., at page 466, 65 S. E., at page 627, MR. CHIEF JUSTICE JONES lays down the doctrine "that, where the Statute confers the right to submit the proposition of bonds for waterworks and sewerage as a single proposition, the Courts have no right to interfere because in their view such submission is unwise and dangerous. If the municipal action is within the statutory power granted, and no constitutional inhibition appears, Courts cannot annul."

I therefore hold that the submission to the voters of the two purposes jointly as one proposition does not violate any constitutional or statutory requirements.

I can see no merit in the contention of plaintiff that city council has no power to issue the $350,000 street improvement bonds as serial bonds instead of making the entire issue mature in 30 years. It is true the wording of the Act authorizing the issue of bonds uses the words "maturing in thirty years," and city council in the ordinance calling the election states that the bonds are to mature in 30 years, but the notice of the election does not refer to the maturity of the bonds, and therefore the voters did not vote on that question so as to bind city council. I do not construe the words in the Act "maturing in thirty years" to mean that none of the bonds can mature in less than 30 years. However, this is unnecessary to be considered, as under the Act approved March 10, 1920, hereinbefore referred to, city council has the right to make the bonds mature serially, and I so hold.

Testimony was introduced and not contradicted showing that the sale of the waterworks and sewerage bonds and funding bonds had been advertised for three full weeks in the Columbia State and Manufacturers' Record, and the street improvement bonds for three full

weeks  in the Columbia State and Manufacturers' Record, and that on the day the bids were opened no bid amounting to par for the bonds was received; that therefore no sale was made at that time, but a bid recently having been received by City Council from J. H. Hilsman & Company amounting to par and accrued interest, such bid was accepted without further advertisement, and a contract for the sale of the bonds entered into with him. There was no allegation or proof that the price was an unfair one, or that there was any fraud in the transaction; therefore I cannot see what grounds for complaint the plaintiff has. The Acts authorizing the issuance of the bonds directed the sale thereof to the highest bidder therefor after at least three full weeks' advertisement of such sale, provided no bid for less than par shall be accepted, and provided that the advertisement of such sale may be repeated until the said bonds are sold at par, in the discretion of city council. The readvertisement is not mandatory, but merely permissive, and in the discretion of city council.

I therefore hold that the sale of the bonds to J. M. Hilsman & Co., at private sale, without readvertisement being had, is valid and legal.

It is therefore ordered that the injunction be refused, and the complaints dismissed, with costs.

The parties, plaintiff and defendants in this cause, by their counsel, through consent indorsed hereupon, have consented and agreed that this decree might be made at chambers with full force and effect as if made in open Court in term time by the presiding Judge thereof.

*Messrs. Nathans & Sinkler,* for appellant, cite: *Petition of majority of freeholders is necessary:* Art. 2, Sec. 13, Const. 1895. *Provision as to advertising not complied with:* 31 Stat. 534, 535, 537. *Submission of two purposes illegal:* 31 Stat., 537; Art. 8, Sec. 7; Art. 10, Sec. 3., Const. 1895. *Requirements as to passage of Act, with amend-*

*ments; not complied with*: Art. 16, Sec. 1; Art. 3, Sec. 18, Const. 1895.

*Mr. Philip H. Arrowsmith,* for respondent, cites: *Validating Act:* 80 S. C., 518; 92 S. C., 318. *Statute authorized joint submission of purposes of issue:* 83 S. C., 546. *Amendment of Act need not be read three times*: 33 S. C., 57.

May 24, 1922.

The opinion of the Court was delivered by MR. JUSTICE WATTS. For the reasons assigned by his Honor, Judge Shipp, it is the judgment of this Court that the judgment of the Circuit Court be affirmed.

MR. CHIEF JUSTICE GARY and MR. JUSTICES FRASER, COTHRAN, and MARION, concur.